UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTONIO EDUARDO COLON,

                    Plaintiff,

          -against-

LORENZO PINA and GLOBAL TRADE BRIDGE,
CORP.,

                    Defendants.

---

Case No. 1:24-cv-05381 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

This case arises from the sale of Defendant Global Trade Bridge, Corp. ("GTB") to nonparty Grupo Rica ("Rica") in 2024. Plaintiff Antonio Eduardo Colon ("Colon") alleges that he operated GTB with his partner, Defendant Lorenzo Pina ("Pina," and together with GTB, "Defendants"), that Pina sold GTB to Rica without his consent, and that Pina has not shared any of the profits from that sale with him. *See generally* Dkt. 41 ("SAC"). Colon brings claims against Pina for breach of the partnership agreement and breach of fiduciary duty, and against both Defendants for unjust enrichment, breach of contract, and promissory estoppel. SAC ¶¶ 85-147. Defendants now move to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. 45. The Court heard oral argument on July 16, 2025. Dkts. 55, 57; Dkt. 61 ("Tr."). For the reasons explained below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Background[1]

Pina, a New Jersey domiciliary, began operating GTB in 2004.  SAC ¶ 7; *Corporation and Business Entity Database*, N.Y. Dep't of State, https://apps.dos.ny.gov/publicInquiry (last visited Aug. 2, 2025) (listing date of initial Department of State filing as September 17, 2004, and Pina as CEO).[2]  GTB, a corporation incorporated and headquartered in New York,

---

[1] The facts stated herein are taken from the SAC and are accepted as true for purposes of this motion.  The Court may also consider any documents incorporated by reference in the SAC. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018). The Court will not consider Defendants' Exhibit A, a copy of an engagement letter dated June 1, 2023, between Pina and Thronos Investments, Inc., *see* Dkt. 47 ("First Hay Decl.") ¶ 2; Dkt. 47-1.  Defendants represent that Exhibit A is the same letter referenced in paragraph 61 of the SAC.  Reply at 6.  However, the SAC refers to an agreement "entered into in May of 2023," which is a different date than that of Exhibit A.  Tr. 49:16-50:20; *see* SAC ¶ 61.  Thus, Colon maintains that it is a different agreement.  Tr. 49:16-50:20.  The Court will accept Colon's counsel's representation, given his obligations under Rule 11 and the different date, that Exhibit A is a different agreement than the allegedly final agreement excerpted in SAC ¶ 61.  Thus, it is not incorporated by reference in the SAC.  *See Optima Media Grp. Ltd. v. Bloomberg L.P.*, No. 17-cv-01898 (AJN), 2018 WL 1587074, at *1 (S.D.N.Y. Mar. 28, 2018) (declining to consider email as integral to or incorporated in the complaint where it was unclear whether the email provided by defendant was "the same communication mentioned in the complaint," since the complaint referred to an email sent on a different date); *Banville & Jones Wine Merchs., Inc. v. La Casa del Ray S.A.*, No. 10-cv-01837 (LMM), 2010 WL 2593629, at *3 (S.D.N.Y. June 25, 2010) (similar).  Defendants argue that Exhibits B and C, Global Trade Bridge Corp., S.R.L.'s and Caribbean Trade & Business Solutions, S.A.'s registration documents in the Dominican Republic, respectively, *see* First Hay Decl. ¶¶ 3-4; Dkt. 54-1 (translated Exhibit C), are incorporated by reference in the SAC.  Reply at 7 (citing SAC ¶¶ 21 n.1, 28 n.5).  The Court need not decide whether there was a "clear, definite, and substantial reference to the[se] documents" in the SAC, *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 440 (S.D.N.Y. 2022) (citation omitted); *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020), because Exhibits B and C are registration documents for entities other than GTB, Tr. 13:6-11, 15:2-10, 18:17-19:3, the substance of which are inconsequential to the Court's analysis here.

[2] The Court takes judicial notice of GTB's filings with the New York Secretary of State.  *See, e.g.*, *Holland v. JPMorgan Chase Bank, N.A.*, No. 19-cv-00233 (PAE), 2019 WL 4054834, at *3 (S.D.N.Y. Aug. 28, 2019) ("Pursuant to [Federal Rule of Evidence] 201, courts have considered documents publicly filed with . . . a Secretary of State, documents filed with governmental entities and available on their official websites, and information publicly announced on certain non-governmental websites, such as a party's official website.").

imports and distributes consumer products and groceries from the Caribbean, as well as Central and South American countries, for distribution and marketing in the United States. SAC ¶¶ 8-9, 18.  By 2006, Pina was experiencing financial difficulties with GTB and his then-partners, since the business was not generating profits.  SAC ¶ 14.  Around the same time, Colon, a citizen of the Dominican Republic, decided to leave his employment with Mercasid, a Dominican company, to open his own business venture similar to GTB.  SAC ¶¶ 6, 15-16. Colon and Pina, who have a "close familial relationship," SAC ¶ 13, discussed forming a joint venture "importing and distributing consumer products and groceries from Latin American countries with offices in New York and the Dominican Republic," SAC ¶ 17.

In late 2006, Colon entered an oral partnership agreement with Pina "regarding the joint ownership, management, and operation of GTB as part of an international enterprise that would import products from . . . Caribbean, Central [American,] and South American countries for distribution and marketing in the United States and other countries for wholesale and eventually, retail."  SAC ¶ 18.  Colon and Pina agreed to be equal partners in the business enterprise and to share equally in the profits, losses, and investments of the business. SAC ¶ 19; *see also* SAC ¶ 29.  Colon agreed to "act as partner, with responsibilities as Defendant GTB's CFO, Administrative VP, General Manager, and Export Manager." SAC ¶ 124.  In exchange, Pina "agreed to equally share in the profits and losses incurred [in] the [GTB] venture . . . with Mr. Colon."  SAC ¶ 124.  Colon alleges that Pina had a "fiduciary relationship" with him "[a]t all relevant times."  SAC ¶ 115.

GTB was the "keystone entity" for the "various international businesses" (the "C&P Enterprise") operated by Colon and Pina; it handled outward-facing contractual and financial transactions and was the "anchor" of the C&P Enterprise's economic activities, since it was the "primary generator of contracts and invoices," while the other businesses acted as

supporting entities.  SAC ¶ 20.  For example, in 2009, Colon incorporated T2 Trading Corp. in Panama.  SAC ¶ 26.  He and Pina again served as "principals/partners," SAC ¶ 26, but "due to issues raised by Defendant Pina's U.S. citizenship," among other things, "Pina asked that Colon remove his name as owner/officer of the company as of January 2024," SAC ¶ 26 n.3. T2 Trading Corp. served as a financial platform for several businesses in the C&P Enterprise and as a hub for payment.  SAC ¶¶ 26-27.  In or about December 2009, C&P Enterprise formed Caribbean Trade & Business Solutions, S.A. ("Caribbean Trade") in the Dominican Republic.  SAC ¶ 28.  Colon and Pina were also "principals/partners in this company and shared equally in the profits and losses of the business."  SAC ¶ 29.  Finally, in 2017, Pina formed another company, Pineapple Distribution Inc. ("Pineapple"), in furtherance of his and Colon's "vision for C&P Enterprise."  SAC ¶ 30.  Pineapple served as a "direct distribution unit" for the "enterprise in the United States," SAC ¶ 30, and was intended to "avoid complaints from GTB clients that GTB was directly competing with them in the retail market" by serving as "the distributor for GTB retail clients."  SAC ¶ 31.  Pina told Colon that the investment and funding for Pineapple "came from proceeds generated by GTB, part of which are attributed directly to Colon's efforts."  SAC ¶ 32.  Since its incorporation in 2017, Pineapple has been "heavily subsidized [by] GTB to cover operational costs, personnel requirements, as well as administrative and financial resources."  SAC ¶ 33.

Colon and Pina used these businesses to support C&P Enterprise with GTB as the anchor until approximately 2024, when a majority share of GTB was sold to Rica.  SAC ¶¶ 2, 35.  During this period, Colon and Pina tracked the capital contributions, reinvestment of profits, and any loans made to GTB.  SAC ¶ 37.  Colon's personal funds were used to pay operational expenses for debts and invoices incurred by GTB in the United States.  SAC ¶ 45. Capital for initial investments in GTB originated from loans to GTB from Colon, as well as

profits generated by Colon and Pina's previous joint ventures that were reinvested into GTB.
SAC ¶ 36.  Colon reinvested the majority of his profits from GTB back into the business "to
continue maintaining and growing the business."  SAC ¶ 49.  The majority of the revenue
generated between 2007 and 2014 came from clients and suppliers with whom Colon had
good working relationships and had secured a long-term agreement that generated increased
revenue, year after year.  SAC ¶ 38.

        Between 2006 and 2023, Colon held various titles at GTB, including CFO,
Administrative VP, General Manager, Vice President of International Business, and Export
Manager.  SAC ¶ 56.  He participated in major decisions regarding strategy, growth,
governance, financing, hiring, firing, transferring employees, making operational and
financial decisions (including the purchase of La Pulperia Digital, an e-commerce business),
and creating a consistent pricing structure.  SAC ¶¶ 54-55.  In November 2018, Pina sent the
company's lawyer an organizational chart listing Colon as the Vice President of International
Business.  SAC ¶ 80.  Colon had the authority to negotiate and enter into contracts with third
parties, and frequently did so during the alleged partnership.  SAC ¶ 58.

        At some point, Colon registered GTB in the Dominican Republic at Pina's request.
SAC ¶ 21.  GTB in the Dominican Republic "served as the administrative wing of C&P
Enterprise."  SAC ¶ 22.  GTB in the Dominican Republic was the "primary hub for IT and
data storage for all of C&P Enterprise," including "[e]mails, invoices, contracts, business
registrations and other financial and operational documentation and data."  SAC ¶¶ 24-25.
Since Colon resided in the Dominican Republic, he took charge of the office, and managed
the finances, accounts, and logistics for C&P Enterprise.  SAC ¶ 23.

        In 2011, Rica issued GTB a Letter of Non-Binding Agreement for the purpose of
negotiating distribution rights in the United States.  SAC ¶ 64.  The letter listed both Pina and

Colon as signatories for GTB.  SAC ¶ 65.  Colon was directly involved in the negotiations with Rica regarding distribution rights in the United States.  SAC ¶ 59.

During the partnership, Colon and Pina also opened joint accounts at Banreservas, a Dominican bank, and BHD International Bank, a Panamanian bank.  SAC ¶ 40.  Colon and Pina were the only two signatories of those joint accounts and they paid each other dividends and distributions from the joint accounts.  SAC ¶ 41.  The accounts received the majority of payments and transfers from GTB's clients and suppliers, and GTB made the majority of its payments to its vendors, clients, and suppliers from those accounts as well.  SAC ¶¶ 42-43.

In May of 2023, GTB entered into an agreement retaining the services of a financial consultant, Juan Arvelo, "to act as the Company's exclusive financial advisor" in the connection with the sale of GTB to Rica.  SAC ¶ 61.  Colon participated in hiring Arvelo. SAC ¶ 60.  At various points during the sale of GTB, Pina told third parties, including an executive of Rica, that he and Colon were business partners.  SAC ¶¶ 62-63.

In June 2023, Rica sent a letter to Colon and Pina indicating its interest in and the initial terms of negotiation for the purchase of 60 percent of the shares in GTB and Pineapple. SAC ¶¶ 66-67.  Colon was directly involved in the negotiations that followed.  SAC ¶¶ 68-70. However, in or about July 2023, Pina cut Colon out of the communications with Rica and told Rica that Colon was not his business partner, did not have an ownership interest in GTB, was not a GTB employee, had no authority or management responsibilities in GTB, and would not receive any of the proceeds from GTB's sale.  SAC ¶ 74.

In late 2024, Pina sold 60 percent of GTB's shares to Rica for an "undisclosed amount in the millions of dollars" without consulting with Colon or obtaining his consent to the sale. SAC ¶ 75.  These shares were "comprised of all of Mr. Colon's portion [of GTB] and the

remainder from Defendant Pina's ownership stake."  SAC ¶ 91.  Colon has not received any proceeds from this sale.  SAC ¶ 76.

## II.  Procedural History

Colon initiated this action on July 17, 2024, asserting claims against "John Doe" and "XYZ Corporation" for breach of a partnership agreement, fraud, negligent misrepresentation, unjust enrichment, breach of fiduciary duty, constructive trust, breach of contract, accounting, promissory estoppel, conversion, fraudulent inducement, and negligence.  Dkt. 1 ("Compl.").  On July 31, 2024, Colon filed a First Amended Complaint as of right pursuant to Rule 15(a)(1)(a), naming Pina and GTB as defendants.  Dkt. 3 ("FAC").

Defendants moved to dismiss the FAC under Rule 12(b)(6) on November 4, 2024, and also moved to stay discovery.  Dkts. 21, 23.  The parties subsequently agreed to a stay of discovery.  Dkt. 33.  On December 17, 2024, the parties informed the Court that Colon intended to amend the FAC and jointly requested an extension of time to amend.  Dkt. 38.  The Court granted the request and dismissed the motion to dismiss the FAC as moot in light of the request, without prejudice to refiling after Colon filed his amended complaint.  Dkt. 39.

Colon filed the Second Amended Complaint on January 31, 2025, principally withdrawing his fraud, negligent misrepresentation, constructive trust, accounting, conversion, fraudulent inducement, and negligence claims.  *See generally* SAC.  Defendants moved to dismiss the SAC on March 17, 2025.  Dkt. 45; Dkt. 46 ("Br."); Dkt. 47 ("First Hay Decl.").  The motion is fully briefed.  Dkt. 52 ("Opp."); Dkt. 53 ("Reply"); Dkt. 54 ("Second Hay Decl.").  The Court heard oral argument on the motion to dismiss on July 16, 2025.  Dkts. 55, 57; Tr.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (*en banc*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court draws all reasonable inferences in the plaintiff's favor and accepts as true all nonconclusory allegations of fact. *Id.* However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## DISCUSSION

Colon brings claims against Pina for breach of the partnership agreement and breach of fiduciary duty (Counts I and III), and against both Defendants for breach of contract, unjust enrichment, and promissory estoppel (Counts II, IV, and V).[3] Defendants move to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6). Dkt. 45.

---

[3] While the parties do not brief choice of law, their briefs cite exclusively New York law and both agreed to the application of New York law at oral argument. *See, e.g.*, Br. at 10 n.3, 17; Opp. at 21; Tr. 6:18-7:9, 47:12-14. "In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law." *Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 255 (S.D.N.Y. 2011) (footnote omitted), *aff'd*, 476 F. App'x 913 (2d Cir. 2012) (summary order). "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp. v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)). Because the parties' briefs rely on New York law, the parties agreed to the application of New York law at this stage, and the Court has not identified a strong

I. **Breach of the Partnership Agreement and Breach of Contract (Counts I and IV)**

Count I alleges that Colon and Pina entered into an oral partnership agreement in late 2006 whereby Colon and Pina were equal partners in GTB, that Colon performed his duties under the contract, and that he was damaged when Pina refused to share the profits from GTB's sale to Rica, as required by Colon and Pina's oral partnership agreement.  SAC ¶¶ 85-97, 122-132.  The breach of contract claim in Count IV against both Defendants is premised upon the same allegations.  Tr. 45:15-46:15.

A. **Legal Standard**

The legal standard for breach of a partnership agreement and breach of contract under New York law are identical — to state a claim for either, a plaintiff must allege that "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages."  *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (citations omitted) (breach of contract); *Jung v. Reiner & Kaiser Assocs.*, 198 N.Y.S.3d 106, 109 (App. Div. 2023) (breach of partnership agreement); *accord Vogel v. TakeOne Network Corp.*, No. 22-cv-03991 (ER), 2023 WL 5276857, at *5 (S.D.N.Y. Aug. 16, 2023); *Mackenzie v. Waypointe Partners Mgmt. LLC*, No. 22-cv-07951 (VSB), 2025 WL 388296, at *5 (S.D.N.Y. Feb. 4, 2025).

B. **Discussion**

Defendants move to dismiss Counts I and IV, arguing that Colon has not adequately alleged the existence or essential terms of the oral partnership agreement.  Br. at 9-12.  Colon acknowledged during oral argument that Counts I and IV are premised on the same oral

---

countervailing public policy, the Court will apply New York law to the claims at issue here. *See Heath v. EcoHealth Alliance*, No. 23-cv-08930 (JLR), 2024 WL 5168072, at *2-3 (S.D.N.Y. Dec. 19, 2024) (applying New York law where parties implicitly consented by citing exclusively to New York law).

partnership contract between Colon and Pina and therefore Count I is subsumed within Count IV.  Tr. 45:15-46:15.

The Court finds that Colon has adequately alleged the existence and essential terms of his oral partnership agreement with Pina.  Where, as here, "there is no written partnership agreement," courts consider the following factors to determine whether plaintiff has alleged the existence of a contract: whether plaintiff has alleged (1) "the sharing of profits and losses of the enterprise"; (2) "the joint control and management of the business"; (3) "the contribution by each party of property, financial resources, effort[,] skill[,] or knowledge"; and (4) "an intention of the parties to be partners."  *Barnes v. Block*, No. 22-cv-07236 (LTS) (RWL), 2025 WL 1736519, at *7 (S.D.N.Y. June 23, 2025) (quoting *N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No. 99-cv-04643 (LAP), 2000 WL 1290608, at *2 (S.D.N.Y. Sept. 12, 2000)); *see Yador v. Mowatt*, No. 19-cv-04128 (EK) (RML), 2021 WL 4502442, at *4 (E.D.N.Y. Sept. 30, 2021) (plaintiff adequately alleged the existence of an oral partnership agreement for purposes of breach of contract claim where he adequately alleged the existence of the partnership).

Colon has pleaded each of these elements.  He alleges that he and Pina entered into an oral agreement in late 2006 regarding the joint ownership, management, and operation of GTB.  SAC ¶ 18.  Pina and Colon agreed to share equally in the profits, losses, and investments in GTB.  *Id.* ¶¶ 19, 48.  They shared equally aspects of "management, administration and operation of the joint venture" as well as "financing and marketing," *id.* ¶ 34, supporting an inference of joint control and management.  Pina and Colon opened joint bank accounts that were used for GTB payments and transfers and they paid each other dividends and distributions from the joint accounts.  *Id.* ¶¶ 41-43.  Colon alleges that he contributed both services and funds to the partnership, *see, e.g.*, *id.* ¶¶ 23, 27, 36-46, and that

Pina held Colon out to others, including Rica, as his partner, *see id.* ¶¶ 62-63, supporting an inference of intent to form a partnership.  These allegations, among others, demonstrate that Colon has adequately alleged that he and Pina formed a partnership in late 2006.  *See Yador*, 2021 WL 4502442, at *2-4 (plaintiff adequately alleged partnership and existence of contract for breach of contract claim where he alleged he and defendant formed a partnership in early 2015, the defendant "held [plaintiff] out to the public as his partner," they divided "duties of event management" and shared profits, and the plaintiff "contributed the initial idea, services, and cash to the business"); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) ("To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract.").  Defendants do not argue that Colon has failed to plead performance, breach, or damages, and the Court finds that Colon has adequately alleged those elements of his claim.

The Court is unpersuaded by Defendants' argument that Colon's claims must be dismissed because he does not plead the particular events giving rise to the formation of the partnership agreement or the agreement's material terms with sufficient specificity.  Defendants largely cite decisions involving a plaintiff's burden at summary judgment or at trial when they assert that Colon bears a heavy burden to plead the breach of an oral agreement.  Br. at 7-9 (first citing *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 514 (S.D.N.Y. 2012) (summary judgment), *aff'd*, 766 F.3d 163 (2d Cir. 2014); then citing *Bloch v. Gerdis*, No. 10-cv-05144 (PKC) (AJP), 2011 WL 6003928, at *3 (S.D.N.Y. Nov. 30, 2011) (same); then citing *Muhlstock v. Cole*, 666 N.Y.S.2d 116 (App. Div. 1997) (posttrial); then citing *Tripmasters, Inc. v. Hyatt Int'l Corp.*, No. 82-cv-06792 (JFK), 1988 WL 117422, at *5

(S.D.N.Y. Oct. 25, 1988) (summary judgment); and then citing *Marcus v. Lominy*, No. 18-cv-01857 (NSR), 2022 WL 493688, at *8 (S.D.N.Y. Feb. 17, 2022) (same)).  While Colon might indeed "face[] a heavier burden" in proving his claims at a later stage, *Delaney*, 908 F. Supp. 2d at 514 (citation omitted), these cases do not change the pleading standard set forth in *Twombly* and *Iqbal*.

The motion-to-dismiss decisions that Defendants cite are also distinguishable.  For example, in *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, No. 12-cv-03584 (JCF), 2014 WL 13110918 (S.D.N.Y. June 20, 2014), the court dismissed an oral contract claim because the complaint did not "identify when any conversations purportedly creating a contract took place, who participated, or what the agreed terms were," nor did it allege any plausible basis for consideration or mutual assent.  *Id.* at *5.  Here, by contrast, Colon has alleged that in 2006, when Pina was having financial difficulties with GTB and Colon was planning on leaving his job at Mercasid, he and Pina discussed forming a joint venture, and specifically discussed the subject of that joint venture.  SAC ¶¶ 14-17.  He alleges that he and Pina entered into an oral partnership agreement in "late 2006."  *Id.* ¶ 18.  He also alleges the agreed-upon terms for the partnership agreement, consideration, and mutual assent: he and Pina agreed to be "equal partners in the business enterprise and to share equally in the profits, losses, and investments into the business," *id.* ¶ 19, Colon agreed to "act as partner, with responsibilities as . . . GTB's CFO, Administrative VP, General Manager, and Export Manager in full consideration of this contract," *id.* ¶ 124, and that "[i]n exchange for Mr. Colon's agreeing to act as . . . GTB's CFO, Administrative VP, General Manager, and Export Manager at various times during the relationship, . . . Pina agreed to equally share in the profits and losses incurred with the venture . . . with Mr. Colon," *id.* ¶ 125.  These

allegations sufficiently detail when the conversations giving rise to the oral contract took place, as well as their content, and adequately allege consideration and mutual assent.

Such allegations are also more extensive than those presented in *Keswani v. Sovereign Jewelry Inc.*, No. 20-cv-08934 (KPF), 2021 WL 4461332 (S.D.N.Y. 2021), where the plaintiff simply pleaded that the parties "started working together." *Id.* at *11-12. Similarly inapposite is *Nichols v. Lawrence H. Woodward Funeral Home*, No. 22-cv-06264 (ALC), 2023 WL 6386902 (S.D.N.Y. Sept. 29, 2023), where the plaintiff argued that she had an "implied oral contract" with defendant for funeral and burial services because she had a history of entering into oral contracts with defendant in the past. The court found such allegations to be insufficient, especially because no details about her past agreements were presented, nor the material terms of her present agreement. *Id.* at *3-4. Colon's allegations do not suffer from these same deficiencies. Likewise, in *Matana v. Merkin*, 989 F. Supp. 2d 313 (S.D.N.Y. 2013), the court dismissed the plaintiff's oral contract claim because it had not alleged "an exchange of promises or other consideration, nor [did] it allege the date on which the contract was entered." *Id.* at 319. Colon specifically identifies the promises exchanged, the consideration provided, and when he and Pina entered into the partnership agreement. Next, in *Kosower v. Gutowitz*, No. 00-cv-09011 (JGK), 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001), the court found that the plaintiff failed to plead an oral partnership in part because there were no allegations that the partners agreed to share in the losses of the partnership, *id.* at *6, whereas Colon expressly pleads that he and Pina agreed to share equally in the losses of the partnership. SAC ¶¶ 19, 48. Finally, in *Brodsky v. Stadlen*, 526 N.Y.S.2d 478 (App. Div. 1988), the Appellate Division concluded that the evidence showed the plaintiff was an employee, not a partner, and that there was no indication of any "intention to enter into a partnership agreement with its concomitant joint management and control with the plaintiff."

13

*Id.* at 479-80.  Not only does *Brodsky* appear to be a summary-judgment affirmance given the reliance upon evidence, as Defendants acknowledged at oral argument, Tr. 28:8-24, Colon alleges that the conversations between himself and Pina took place in late 2006 and identifies the material terms of the agreement, namely that Colon and Pina agreed to share profits, losses, and investments equally.  He also alleges an exchange of promises, namely, that in exchange for Colon agreeing to act as partner and serve in the roles of CFO, Administrative VP, General Manager, and Export Manager, Pina "agreed to equally share in the profits and losses incurred with the venture" with Colon.  SAC ¶¶ 124-125.  Thus, Colon has done enough, at this stage, to allege the existence of an oral partnership agreement and its essential terms.[4]

However, the breach of contract claim is deficient against GTB.  The SAC fails to identify any promise made by GTB to Colon or oral agreement between GTB and Colon.  *See Full Circle United, LLC v. Skee-Ball, Inc.*, Nos. 11-cv-05476 (LB), 11-cv-06277 (LB), 2014 WL 12829195, at *5 (E.D.N.Y. May 13, 2014) (to allege the existence of an enforceable contract, the plaintiff must allege, among other things, "that the party to be bound assented to the contract" (citation omitted)); *see, e.g.*, *Keswani*, 2021 WL 4461332, at *12 (dismissing breach of contract claim where plaintiff did not "allege the existence of an express agreement").  Rather, Colon alleges that he had an oral partnership agreement with Pina

---

[4] Defendants also claim that Colon's assertion of a fifty-fifty partnership is not plausible because Colon admits that Pina had other partners prior to 2006, but has not alleged how he or Pina obtained shares from those partners to become equal partners in GTB in 2006.  Br. at 11. The plausibility standard does not require Colon to allege what happened to partners that preceded him in order to allege that he and Pina formed a later partnership, *see Yador*, 2021 WL 4502442, at *2 (listing elements of partnership), and Defendants cite no case indicating that he must.  Finally, the Court is not persuaded by Defendants' argument that a partnership did not exist because Colon lent money to Pina during the partnership, Br. at 16, since Colon alleges that he lent money to GTB, not Pina, SAC ¶ 36.

regarding GTB, and nowhere alleges that he had a partnership agreement with GTB. SAC ¶ 18.  While Colon argues that GTB is vicariously liable for the acts of Pina as an agent of GTB, there are no nonconclusory factual allegations that support this argument, and Colon only cites inapposite cases involving tort liability, not breach of contract, the claim alleged here.  Opp. at 32 (first citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (discussing an employer's liability for "negligent and intentional torts" committed by their employees); then citing *New Orleans, M & C R Co. v. Hanning*, 82 U.S. 649, 657 (1872) (similar); and then citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (explaining that the Fair Housing Act provides for vicarious liability and effectively created a tort action for victims of housing discrimination)).  Therefore, Colon fails to state a breach of contract claim against GTB.

The Court thus dismisses Count IV against GTB, and dismisses Count IV against Pina as duplicative of Count I.

## II.    Unjust Enrichment (Count II)

Colon next brings a claim for unjust enrichment against Pina and GTB, alleging that Defendants were unjustly "enriched by virtue of [his] financial contributions, services, knowledge, relationships, and expertise provided to the business," including Colon's work on the sale of GTB.  SAC ¶¶ 98-113.  Defendants argue this claim should be dismissed as duplicative of the breach of contract claim or, in the alternative, that Colon fails to plead a plausible claim for unjust enrichment.  Br. at 19-20.  The Court is not persuaded.

To state a claim for unjust enrichment, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024) (quoting *Georgia Malone & Co. v.*

*Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) (quoting *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 536-37 (S.D.N.Y. 2021)). "Rather, it is 'available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Id.* (quoting *Patellos*, 523 F. Supp. 3d at 537). However, "[a] court may allow a breach of contract and an unjust enrichment claim to proceed past the motion to dismiss stage when the validity or scope of the contract is difficult to determine." *Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 532 (S.D.N.Y. 2018) (citation omitted).

The Court will not dismiss the unjust enrichment claim against Pina as duplicative of Count I. Although Colon's unjust enrichment claim is based on the same conduct as his breach of contract claim, Defendants dispute the partnership agreement's existence. *See* Br. at 7. "[B]ecause there is a dispute concerning the existence of [the] contract," the Court will "allow Plaintiff to plead unjust enrichment in the alternative to his breach of contract claim." *Mackenzie*, 2025 WL 388296, at *6; *see also, e.g.*, *Advanced Oxygen Therapy v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 35 (S.D.N.Y. 2021) (denying motion to dismiss purportedly duplicative unjust enrichment claim where defendants disputed the "existence . . . of the underlying partnership agreement"). While Colon "may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative," *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 266 (S.D.N.Y. 2017) (quoting *Transcience Corp. v. Big Time Toys*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014)), and Colon may do so here.

Defendants next argue that the SAC has not pleaded a plausible unjust enrichment claim against Pina or GTB because Colon has only generally alleged that he "added value to GTB." Br. at 19-20. This argument ignores Colon's numerous, specific allegations of contributions he made to GTB during the alleged partnership, including his use of "personal funds . . . to pay operational expenses for and pay[] debts/invoices incurred by GTB in the United States" in the range of "millions of dollars." SAC ¶¶ 45-46. He also alleges that he "reinvested the majority of his profits from [GTB's] revenue back into GTB," *id.* ¶ 49; *see also id.* ¶ 105, and that Pina and GTB have been unjustly enriched by retaining the benefit of Colon's services, including the portion from the sale of GTB allegedly owed to Colon as well as debts owed to Colon, *id.* ¶¶ 110-113.

*Oppedisano v. Zur*, No. 20-cv-05395 (VB), 2024 WL 967260 (S.D.N.Y. Mar. 5, 2024), cited by Defendants, does not require dismissal of the unjust enrichment claim. In *Oppedisano*, the court held that plaintiff, who alleged the existence of a partnership and sought to recover "the value of his interest in the alleged partnership or the increase in the value of the business during [the] relationship," could seek "equitable relief for the value of his services generally," but could not "recover an ownership interest or share of the business's assets . . . based on his status as a partner" under an unjust enrichment claim. *Id.* at *8-9 (citation omitted). Here, Colon seeks in part to recover investments made in GTB categorized as debts, which he contends helped to make GTB profitable. SAC ¶¶ 105, 113. Thus, his unjust enrichment claim against Defendants may proceed insofar as Colon seeks "compensation for the value of [his] contributions of time, services, and money to [GTB]." *Oppedisano*, 2024 WL 967260, at *9.

The Court finds that Colon has adequately alleged a claim for unjust enrichment against Pina and GTB. Defendants' motion to dismiss Count II is denied.

### III.    Breach of Fiduciary Duty (Count III)

In Count III, Colon alleges that he and Pina had a fiduciary relationship and that Pina breached his fiduciary duties by failing to acknowledge Colon's "equal partnership relationship," resulting in damages to Colon when he was cut out of the sale of GTB and proceeds from the sale.  SAC ¶¶ 115-117.  Defendants move to dismiss this claim, arguing that it is duplicative of Colon's breach of contract claim against Pina.  Br. at 16-18.  The Court agrees with Defendants.

"To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'"  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)).  "A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Id.* (alteration in original) (quoting *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991)).

"Under New York law, '[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.'"  *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 679 (S.D.N.Y. 2022) (alteration in original) (quoting *William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (App. Div. 2000)).  Breach of fiduciary duty claims are duplicative of breach of contract claims where they are "premised upon the same facts and seek the same damages for the alleged conduct."  *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013).

Here, Colon contends that Pina breached his fiduciary duty by "failing to acknowledge the seventeen . . . year, equal partnership relationship established by Mr. Colon and Defendant

Pina," resulting in Colon "suffer[ing] damages by way of being cut out of the sale of

Defendant GTB and the proceeds from the sale." SAC ¶¶ 116-117. This is "precisely the

same conduct that forms the basis of Plaintiff's claims for breach of the [partnership

agreement]." *Catalyst Advisors*, 602 F. Supp. 3d at 679; *see* SAC ¶ 96 (alleging in breach of

contract claim that "[b]y denying the existence of the equal share partnership, Defendant Pina

has breached the oral agreement"). As Colon's claim is identical to the breach of contract

claim, it must be dismissed as duplicative. *See Gasery v. Kalakuta Sunrise, LLC*, 422 F.

Supp. 3d 807, 820 (S.D.N.Y. 2019) ("A breach of fiduciary duty claim is duplicative when it

is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach

of contract claim." (citation omitted)); *see, e.g.*, *Catalyst Advisors*, 602 F. Supp. 3d at 679-80

(dismissing breach of fiduciary duty claim that was based on the "same conduct" as the breach

of contract claim and "fail[ed] to specify how [d]efendants breached any fiduciary duty to

[p]laintiff, separate and apart from their alleged breaches of their contractual obligations under

the [limited partnership agreement]"); *Najjar Grp., LLC v. W. 56th Hotel LLC*, No. 14-cv-

07120 (RA), 2017 WL 819487, at *5 (S.D.N.Y. Mar. 1, 2017) (denying leave to amend where

plaintiff's breach of fiduciary duty claim was "based upon the same facts and theories as [its]

breach of contract claim" (alteration in original) (citation omitted)); *Uni-World Cap., L.P. v.

Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014) (denying leave to amend

where plaintiffs' breach of fiduciary duty claim did "not allege or point to a single fact

supporting the proposed breach of fiduciary duty claim that [was] not already included in the

proposed breach of contract claim").

　　Citing to *Board of Managers of Brightwater Towers Condominium v. FirstService

Residential New York, Inc.*, 147 N.Y.S.3d 78 (App. Div. 2021), Colon attempts to differentiate

his breach of fiduciary duty claim from his breach of contract claim by arguing that he has

alleged breaches that are outside the duties set forth by the partnership agreement, such as "misappropriation of funds[] and instances of self-dealing."  Opp. at 26-27.  Putting aside the fact that the SAC does not specifically allege misappropriation of funds and self-dealing, Colon's reliance on *Brightwater Towers* is misplaced.  In that case, the court found that the plaintiff had alleged that defendant, the managing agent of a condominium, owed a fiduciary duty to the board of managers.  *Brightwater Towers,* 147 N.Y.S.3d at 81.  The Appellate Division held that the breach of fiduciary duty claim was not duplicative of the breach of contract claim because plaintiff had alleged "specific breaches of trust which [were] outside the duties set forth in the management agreement, such as misappropriation of funds, and instances of self-dealing."  *Id.* at 81-82.  Here, by contrast, Colon has alleged that the partnership agreement required Pina to share GTB's profits equally with him and that he breached this duty by failing to share the profits from GTB's sale with Pina as required.  SAC ¶¶ 115-117.  These allegations involve the violation of the obligations that Colon contends were set forth in the alleged partnership agreement, not the violation of duties outside the partnership agreement, as in *Brightwater Towers*.  *Cf. Yador,* 2021 WL 4502442, at *5 (denying motion to dismiss breach of fiduciary duty claim where plaintiff alleged that defendant partner breached its fiduciary duties by actions outside of a breach of the partnership agreement such as concealing profits).  Therefore, the Court dismisses Colon's breach of fiduciary duty claim as duplicative of his breach of contract claim.

## IV.    Promissory Estoppel (Count V)

Finally, Colon brings a claim for promissory estoppel against both Defendants.  He argues that in 2006, Pina made oral, unambiguous promises to enter into a partnership with Colon and to share GTB's profits and losses equally with Colon, that Colon reasonably relied on those promises, and that he has now been harmed by Pina's refusal to pay him his share of

the profits from the sale of GTB to Rica.  SAC ¶¶ 133-147.  Defendants argue this claim

should be dismissed since (1) it is duplicative of the breach of contract claim, (2) Colon does

not allege a specific promise Defendants made, and (3) promissory estoppel is inapplicable

where, as here, Colon does not plead a contract-formation problem.  Br. at 18-19.  The Court

is unpersuaded.

To state a claim for promissory estoppel under New York law, a plaintiff must allege

"1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise;

and 3) injury to the relying party as a result of the reliance."  *Blank v. TriPoint Glob. Equities,*

*LLC*, 338 F. Supp. 3d 194, 220 (S.D.N.Y. 2018) (quoting *Kaye v. Grossman*, 202 F.3d 611,

615 (2d Cir. 2000)).  While "the existence of a valid contract" ordinarily precludes quasi-

contractual recovery, like promissory estoppel, for events arising from the same subject

matter, plaintiffs "may nonetheless plead the alternative theories of promissory estoppel and

breach of contract when the defendant does not concede the enforceability of such contract."

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 214 (S.D.N.Y. 2021)

(citation omitted).

Colon has sufficiently alleged a "clear and unambiguous promise" by Pina on which

he relied to his detriment.  "A promise that is too vague or too indefinite is not actionable

under a theory of promissory estoppel; the alleged promise must be clear and unambiguous."

*Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 469

(S.D.N.Y. 2018) (quoting *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 534

(E.D.N.Y. 2015)).  Colon pleads that Pina made "oral unambiguous promises," SAC ¶ 134,

namely his "promises to Mr. Colon to enter into a partnership and to share equally in the

profits and losses of Defendant GTB," *id.* ¶ 135.  These promises, combined with the other

allegations of Pina's promises elsewhere in the SAC, are sufficiently clear and unambiguous to state a claim against Pina.

The Appellate Division's decision in *CIP GP 2018, LLC v. Koplewicz*, 150 N.Y.S.3d 51 (App. Div. 2021), is instructive. In that case, as here, the plaintiff alleged the existence of an oral partnership agreement with two defendants, including an agreement to "contribute their unique skills as entrepreneurs and investment professionals in exchange for a one-third ownership interest in the partnership." *Id.* at 52. The Appellate Division reasoned that since the plaintiff had adequately alleged the terms of the partnership agreement, the "plaintiff's promissory estoppel claim that it reasonably relied on the agreement to its detriment [was] also adequately pleaded." *Id.* at 53. Here too, Colon has pleaded the existence of a partnership agreement and that he reasonably relied on the terms of that agreement to his detriment. As such, he has stated a claim for promissory estoppel against Pina.[5]

The Court is not persuaded by Defendants' argument that promissory estoppel is available only in cases where "some contract formation problem," like the statute of frauds or a failure of consideration, "would otherwise prevent enforcement," Br. at 18-19 (quoting *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013)). This argument is a variation of the rule that a promissory estoppel claim is not available where it duplicates a conventional contract claim. *See Rinaldi v. SCA La Goutte, d'Or*, No. 16-cv-

---

[5] The instant promises differ from those in *Palazzolo*, which Defendant cites, *see* Br. at 18. In that case, the promise at issue was the board of managers' grant of "full and complete control" over an account and "permission and authority to engage in transactions involving the Board, which in [the counterclaimant]'s experience, were in the best interest of the Board and the Condominium." 346 F. Supp. 3d at 469-70 (citation omitted). The court reasoned that the promise was "vague and indefinite" and "did not set the parameters of [the] relationship in any way." *Id.* at 170 (citation omitted). Here, by contrast, Pina's promise set the parameters of the relationship: Pina and Plaintiff were to be equal partners in GTB, sharing equally in profits and losses.

01901 (VSB), 2020 WL 5441290, at *8 (S.D.N.Y. Sept. 9, 2020) ("If the promissory estoppel claim is not meant to overcome a defense of statute of frauds or any other contract formation issue, the promissory estoppel claim should be dismissed as duplicative of the breach of contract claim."). But "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies." *Koplewicz*, 150 N.Y.S.3d at 53 (quoting *Sabre Int'l Sec., Ltd. v. Vulcan Cap. Mgmt., Inc.*, 944 N.Y.S.2d 36, 41 (App. Div. 2012)). Since Defendants dispute the existence of the oral contract, the Court will permit Colon to plead promissory estoppel in the alternative.

However, the Court will dismiss the promissory estoppel claim against GTB for the same reasons it dismissed the breach of contract claim against GTB: Colon has not alleged a clear and unambiguous promise made by GTB on which he relied, and thus cannot state a claim against GTB. Thus, the Court grants the motion to dismiss Count V against GTB, but denies it as against Pina.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court denies the motion to dismiss Counts I and II, and grants the motion to dismiss Counts III and IV with prejudice. Finally, the Court grants the motion to dismiss Count V with prejudice as to GTB, but denies the motion to dismiss this claim against

Pina.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. 45.  The

parties are directed to submit a proposed Civil Case Management Plan by **September 4, 2025**.

Dated:  August 4, 2025
　　　　New York, New York

　　　　　　　　　　　　　　　SO ORDERED.

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　JENNIFER L. ROCHON
　　　　　　　　　　　　　　　United States District Judge